

FILED

2023 May-10 PM 02:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **RAYMON MARQUELL HARRIS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **7:20-cv-08029-LSC** |
| | ) | **(7:17-cr-00145-LSC-HNJ-1)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

Before this Court is a motion by Raymon Marquell Harris ("Harris" or "Petitioner") to vacate, set aside, or otherwise correct his sentence of 210 months' imprisonment and 60 months' supervised release pursuant to 28 U.S.C. § 2255 ("§ 2255"). (Doc. 1.) The United States ("Government") responded in opposition to the motion. (Doc. 10.) For the reasons set forth below, Harris's § 2255 motion (doc. 1) is due to be denied and the present action dismissed.

### II.    Background

#### A.    Charges and Sentencing

On March 31, 2017, a grand jury indicted Harris, charging him with being a

felon[1] in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Cr. Doc. 1 at

1.)[2] Adam Danneman, Assistant Federal Public Defender, represented Harris in the

subsequent proceedings. (*See* Cr. Doc. 8.) Harris ultimately entered into a plea

agreement with the Government and pleaded guilty to the charge. (Cr. Doc. 15.) This

Court accepted his guilty plea on July 20, 2017. (Cr. Doc. 36 at 1, 16.) Pursuant to his

agreement, Harris stipulated that the factual basis therein was "substantially

correct." (Cr. Doc. 15 at 4.) Specifically, Harris acknowledged that he had admitted

to possessing the firearm at issue and that he had previously accrued seven felony

convictions. (*Id.* at 3–4.) The Government, in turn, agreed to recommend a term of

incarceration on the low end of the sentencing guideline range. (*Id.* at 4.)

Additionally, Harris waived his right to challenge his conviction and/or sentence

through an appeal or, *inter alia*, a motion pursuant to § 2255 unless (a) this Court

imposed a sentence greater than the applicable statutory maximum sentence and/or

the guideline sentencing range or (b) Harris received ineffective assistance of

counsel. (*Id.* at 5–6.)

---

[1] For purposes of this Opinion, the term "felony" refers to "a crime punishable by imprisonment for a term exceeding one year," and "felon" refers to an individual convicted of such a crime. *See* 18 U.S.C. § 922(g)(1); *see also Taylor v. United States*, 495 U.S. 575, 578 (1990) ("Under 18 U.S.C. § 922(g)(1), it is unlawful for a person who has been convicted previously [of] a felony to possess a firearm.").

[2] "Cr. Doc." refers to an entry on the docket sheet in the underlying criminal case, *United States v. Harris*, No. 7:17-cr-00145-LSC-HNJ-1.

At Harris's sentencing hearing, this Court adopted the findings of Harris's pre-sentence investigation report ("PSR") and determined that his advisory guideline imprisonment range was 180 months to 210 months after applying a sentence enhancement pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). (Cr. Doc. 35 at 10.) Harris objected to the application of the sentence enhancement, and the Government responded in support thereof. (Cr. Doc. 35 at 2–9.) This Court overruled Harris's objection. (*Id.* at 9.) The Government recommended, and Harris's counsel, Danneman, requested, a sentence of 180 months' imprisonment. (*Id.* at 11–13.) Considering Harris's extensive criminal history, this Court determined that a sentence on the high end of the guideline range was appropriate in light of "the nature and circumstances of the offense and the history and characteristics of this particular defendant." (*Id.* at 13–14.) Accordingly, this Court sentenced Harris to 210 months' imprisonment followed by 60 months' supervised release. (*Id.*) On March 30, 2018, this Court entered judgment against Harris. (Cr. Doc. 25.)

### B.     Appeal[3]

Harris filed a timely appeal of his sentence on April 12, 2018, still listing

---

[3] The Eleventh Circuit published its opinion regarding Harris's appeal. *See United States v. Harris*, 941 F.3d 1048 (11th Cir. 2019). The opinion is also available as an entry on the docket sheet in the underlying criminal case. (*See* Cr. Doc. 37-1.) For the sake of brevity, this Court will hereafter cite only to the published opinion.

Danneman as his counsel. (*See* Cr. Doc. 28.) Harris's only argument on appeal concerned this Court's classification of his prior state conviction for attempted first-degree assault as a violent felony for purposes of the ACCA sentence enhancement. *See Harris*, 941 F.3d at 1050. The Eleventh Circuit affirmed this Court's decision. *Id.* Harris did not file a petition for a writ of certiorari.

### C.      § 2255 Proceedings

Harris filed the present § 2255 petition on July 1, 2020.[4] (Doc. 1 at 12.) Liberally construing the claims in Harris's petition,[5] including those in his motions to supplement and amend the petition (*see* docs. 3–4, 11–13), he asserts four claims of ineffective assistance of counsel and three substantive claims upon which he contends that he is due relief. (*See* Doc. 1 at 4–8; Doc. 3 at 1–2; Doc. 11 at 1–3; Doc. 13 at 1–15.) Harris argues that his counsel rendered ineffective assistance for the following reasons:

1.      Misleading Harris into pleading guilty, thus rendering Harris's guilty plea involuntary (doc. 1 at 5);

2.      Failure to object to this Court's consideration and admission into evidence of the plea colloquy for Harris's state conviction of attempted first-degree assault as the factual basis for characterizing the conviction as a "violent felony" for purposes of the ACCA

---

[4] Applying the "mailbox rule," the Eleventh Circuit deems a prisoner's § 2255 motion as filed upon the "date that he delivered it to prison authorities for mailing, presumptively, . . . the day that he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).

[5] Because Harris is a *pro se* litigant, this Court liberally construes his pleadings. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

sentence enhancement (doc. 1 at 4);

3.    Failure to argue, pursuant to *Rehaif v. United States*, 139 S. Ct. 2191 (2019), that the Government must prove that Harris knew he was a felon for a conviction under 18 U.S.C. § 922(g)(1) (doc. 1 at 6–7);

4.    Failure to file a petition for rehearing or rehearing en banc or petition for a writ of certiorari (doc. 1 at 8).

(*See* Doc. 1.) Harris also raises the following substantive claims:

1.    Pursuant to *Rehaif*,[6] the Government failed to prove that Harris knew he was a felon (doc. 13 at 1–8);

2.    Harris's convictions under Alabama Code § 13A-12-211(a) (1975) are not "serious drug offenses" under the ACCA (doc. 4 at 1–2; doc. 13 at 9–15);

3.    Harris's conviction under Alabama Code § 13A-6-20(a) for attempted first-degree assault does not constitute a "crime of violence" under the ACCA (doc. 11 at 1–3).

(*See* Docs. 4, 11, 13.)

### III.    Timeliness and Non-Successiveness of Harris's § 2255 Motion

The Eleventh Circuit affirmed this Court's decision on November 27, 2019. *Harris*, 941 F.3d at 1050. Because Harris did not file a petition for a writ of certiorari, the Eleventh Circuit's judgment became final on February 25, 2020. *See* SUP. CT. R. 13; *see also Michel v. United States*, 519 F.3d 1267, 1268 n.1 (11th Cir. 2008) ("When no petition for writ of certiorari is filed, the judgment becomes final for § 2255 purposes when the time for filing the petition expires. A petition for writ of certiorari

---

[6] 139 S. Ct. 2191.

must be filed within 90 days of the day the appellate court's judgment was entered.")

(citations omitted). Harris filed the instant § 2255 motion on July 1, 2020, within one

year after the date on which his conviction became final, making his filing timely. *See*

28 U.S.C. § 2255(f)(1).

Harris is bringing his first § 2255 motion, so it is not "second or successive"

within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996

("AEDPA"). *See* 28 U.S.C. at §§ 2255(h), 2244(b)(3)(A).

## IV.    Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for

collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A

petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1)

violated the Constitution or laws of the United States, (2) exceeded its jurisdiction,

(3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral

attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir.

2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under

28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that

narrow compass of other injury that could not have been raised in direct appeal and

would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United*

*States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837

F.2d 965, 966 (11th Cir. 1988)).

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520–21 (5th Cir. 1979)). However, an evidentiary hearing is appropriate if, "accept[ing] all of the petitioner's alleged facts as true," the petitioner has "allege[d] facts which, if proven, would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

## V.    Discussion

### A.    Ineffective Assistance of Counsel

Harris asserts four grounds of ineffective assistance of counsel in his § 2255 motion.  All of these assertions are meritless and will be dismissed without a hearing.

Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to procedural default for failing to raise them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim has two components: first, the petitioner

"must show that the counsel's performance was deficient;" second, the petitioner "must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The second component is satisfied only when the petitioner shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In examining counsel's performance, the Court should be "highly deferential." *Strickland*, 466 U.S. at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints; rather, he "must identify the acts or omissions of counsel that are alleged not to have been the

result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

The Court need not address both components of the *Strickland* test if a petitioner does not satisfy one component. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Therefore, where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *Id.* ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong . . . or vice versa.") (citing *Strickland*, 466 U.S. at 694). Where the court does consider the prejudice prong, the petitioner must show that counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. A petitioner meets this burden by establishing by a reasonable probability that the outcome of the proceeding would have been different but for his counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391–93 (2000); *Strickland*, 466 U.S. at 691.

To establish prejudice in the context of a guilty plea, a petitioner must establish that, but for his counsel's unprofessional errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 53, 59 (1985). In the guilty plea context, there is a strong presumption that an attorney's actions are reasonable. *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–49 (11th Cir. 2015). "We recognize that in deciding whether to enter a plea,

defense lawyers carefully balance both 'opportunities and risks' without fully knowing the strength of the [prosecution's] case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. Therefore, to establish deficient performance, the petitioner must show "that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

As further analyzed below, Harris's counsel at the trial and appellate levels did not render ineffective assistance, and Harris cannot demonstrate that the outcome of his sentence or appeal were adversely affected.

### 1.     Danneman did not mislead Harris into pleading guilty.

Harris's claim that Danneman misled him into pleading guilty and thus rendered his plea involuntary is meritless. Based on a review of the record, this Court finds that Harris freely, knowingly, and voluntarily entered into the plea agreement that the Government offered.

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. at 59 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quotations omitted) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)).

The record negates Harris's ability to satisfy the two-prong *Strickland* test and plainly demonstrates that his decision to enter his plea of guilty was well informed and of his own volition. Harris alleges that Danneman was "adamant" that he was facing a ten-year sentence at worst but would more likely receive a sentence between 51 and 63 months. (Doc. 1 at 5.) Harris further maintains that Danneman definitively told him that the ACCA did not apply to him. (*Id.*)

Danneman, conversely, asserts in an affidavit that he explained to Harris

"what the ACCA entailed," the definitions thereunder of violent felonies and serious drug offenses, and the Government's burden of proof. (Doc. 10-1 at 1.) Danneman states that "Harris was initially fixated" on the fact that the indictment did not include mention of Harris's two convictions for serious drug offenses and that he advised Harris "that the Court could consider prior convictions that were not listed in the indictment." (*Id.*) Moreover, Danneman says that he informed Harris that "he could be subject to the ACCA," that Harris's attempted first-degree assault conviction would be categorized as a violent felony, and that he and Harris "would challenge that designation because it was unclear which subsection of the statute he was convicted under." (*Id.* at 1–2.)

Notably, Danneman asserts that he told Harris that "his guideline range would be 51–63 months after acceptance of responsibility and that his statutory maximum punishment would be 10 years" *only if* they prevailed in challenging the designation of Harris's attempted first-degree assault conviction as a violent felony. (Doc. 10-1 at 2.) Danneman further notes that he told Harris "that the guidelines were advisory," that the ACCA enhancement was mandatory if applicable to Harris, and "that the sentencing range under the ACCA would be 15 years to life." (*Id.*)

Two primary differences exist between Harris's and Danneman's accounts: 1) whether Danneman told Harris that he was *not* subject to the ACCA or that he

*could* be subject to the ACCA, and 2) whether Danneman informed Harris of the sentencing guideline range if the Court determined that the ACCA did apply. Harris argues that Danneman told him that the ACCA did not apply and that Danneman never informed him of his potential sentence under the ACCA.[7] (*See* Doc. 1 at 5.) Even taking Harris's allegations as true, he nonetheless fails to demonstrate the requisite prejudice. Harris's statements during the plea colloquy clearly demonstrate that he entered a guilty plea knowingly and voluntarily. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the colloquy are true.") (citing *United States v. Gonzalez-Mercado*, 808 F.2d 796, 799–800 n.8 (11th Cir. 1987)).

With respect to Danneman's overall performance, the following exchange took place between this Court and Harris at the plea hearing:

THE COURT: . . . How has [Danneman] done as far as a lawyer goes?

[HARRIS]: He has done good, sir.

(Doc. 36 at 3.) Furthermore, Harris repeatedly asserted that Danneman had reviewed the relevant documents with him and explained the contents therein as well as Harris's rights and the Government's burden of proof. (*See* Doc. 36 at 3–7.)

---

[7] Though Harris never explicitly states that Danneman failed to inform him of the sentencing guideline range under the ACCA, he asserts that Danneman "was adamant . . . that all [Harris] was facing was . . . at worst, the statutory max of 10 years." (Doc. 1 at 5.)

Finally, after discussing the nature and elements of the charge against Harris and confirming his understanding thereof, this Court addressed Harris's possible sentence:

> THE COURT: Now, I need to make sure you understand the range of punishment you are facing. There [are] two ranges of punishment. There is the guideline range — that's advisory, and I assume your lawyer talked to you about what the guideline range might end up being in your case. Did he do that?
>
> [HARRIS]: Yes, sir.
>
> THE COURT: **He might have gotten it right; then again, he might not. Nobody can tell you what your guideline range will end up being until we have your sentencing hearing. Do you understand what I mean?**
>
> [HARRIS]: **Yes, sir.**
>
> THE COURT: **So, that could change. And if it does change, you are not going to be able to ask me to set aside the guilty plea because it changes.**
> **Do you have any questions about that?**
>
> [HARRIS]: **No, sir.**
>
> THE COURT: Okay. I can tell you what the statutory range of punishment is. It starts out with this. If you had just one prior felony or two prior felonies, then your punishment would be not more than ten years in prison. But you have got several felonies, it looks like, that you [have] pled guilty to or been convicted of.
> **If it is found that you had three offenses that you were found guilty of prior to the date you possessed the firearm or firearms in this case, and they were either serious drug offenses or violent felonies** as defined by the United States Code, then you would not be subject to in-custody imprisonment

of not more than ten years. Instead, **your prison time would be not less than 15 years, no more than your lifetime.**
**Do you understand that?**

[HARRIS]: **Yes, sir.**

THE COURT: **Did you and your lawyer talk about that?** We call that the Armed Career Criminal Act enhancement. Did y'all talk about that?

[HARRIS]: **Yes, sir.**

THE COURT: . . . If the Armed Career Criminal Act enhancement does not apply to you, then your supervised release term following your imprisonment is not more than three years.
On the other hand, if the Armed Career Criminal Act does apply to you, then you would be subject to a supervised release term of not more than five years. Do you understand that?

[HARRIS]: Yes, sir.

THE COURT: . . . And if the Armed Career Criminal Act applies, there can't be any probation or suspension of your sentence possible.
Do you understand that?

[HARRIS]: Yes, sir.

. . .

THE COURT: **Now, do you feel like you know enough about the Armed Career Criminal Act that you will know whether or not it applies to you?**

[HARRIS]: **Yes, sir.**

THE COURT: Do you want to ask me anything else about that?

[HARRIS]: No, sir.

(Doc. 36 at 9–12 (emphasis added).)

The plea colloquy demonstrates that, irrespective of any advice Danneman gave or failed to give, Harris unquestionably had knowledge that 1) this Court would not determine his sentencing guideline range until his sentencing hearing; 2) no one, not even his lawyer, could tell him what his guideline range would be until the sentencing hearing; 3) the ACCA enhancement may apply; and 4) in the event that the ACCA did apply, his sentencing range would be fifteen years to life in prison. Harris fails to allege any facts discrediting his own sworn testimony or supporting a reasonable probability that he would not have entered a guilty plea but would have insisted on going to trial if Danneman had apprised him of the relevant guideline ranges under the ACCA prior to the plea hearing. Consequently, Harris cannot demonstrate the requisite prejudice.

> **2.    Danneman did not render ineffective assistance by declining to object to this Court's admission into evidence and consideration of the factual basis in the state court plea colloquy transcript of Harris's underlying attempted first-degree assault conviction.**

At Harris's sentencing hearing, Danneman objected to the classification of Harris's conviction for attempted first-degree assault as a violent felony on the grounds that the relevant statute is divisible and that a conviction under certain subsections would not qualify as a violent felony for purposes of the ACCA

mandatory sentence enhancement. (*See* Doc. 35 at 2–4.) Danneman further argued that the plea colloquy from the state court did not establish the subsection of the assault statute to which Harris pled guilty of attempt and that, consequently, the ACCA enhancement was inapplicable because Harris could have pled guilty under one of the subsections that did not meet the definition of a violent felony. (*See id.*)

Harris now argues that Danneman should have objected to the plea colloquy's factual basis because Harris never assented thereto at the state plea hearing, thus supposedly precluding this Court from relying on those facts. (Doc. 1 at 4.) Eleventh Circuit precedent robs this argument of merit.

Danneman lacked any legal basis for objecting to this Court's consideration of the factual basis in the state plea colloquy's transcript, and he did not render ineffective assistance by failing to raise a non-meritorious objection. *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015). "Failing to make a meritless objection does not constitute deficient performance." *Id.*; *see also, e.g.*, *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d 739, 755 (11th Cir. 2011) ("[C]ounsel cannot be labeled ineffective for failing to raise issues that have no merit.") (quoting *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990)). Any objection by Danneman to this Court's admission into evidence and consideration of the factual proffer in the state colloquy transcript would have been frivolous because this Court properly relied in part on

the colloquy transcript as a *Shepard* document in determining that the elements of Harris's attempted first-degree assault conviction met the definition of a violent felony under the ACCA. *See Shepard v. United States*, 544 U.S. 13, 25 (2005).

A state court must determine whether an adequate factual basis supports a plea of guilty before accepting the plea. ALA. R. CRIM. P. 14.4(b). Where the state court establishes the factual basis during the plea colloquy, the transcript of the colloquy is a *Shepard* document. *See* 544 U.S. at 25. When a defendant's conviction falls under a divisible statute,[8] a subsequent sentencing court may look to the factual basis in the plea colloquy transcript of the underlying conviction to determine the elements of the offense as long as the defendant assented to those facts during the colloquy. *See Shepard*, 544 U.S. at 25 (stating that, for purposes of an ACCA enhancement, a sentencing court may look to the plea agreement or colloquy of the underlying conviction where the defendant assented to the factual basis therein to determine the elements of the offense to which the defendant pled guilty); *see also Descamps*, 570 U.S. at 264 (stating that a sentencing court may look to *Shepard* documents — "i.e., indictment, jury instructions, plea agreement, and plea colloquy" — to determine the elements of a defendant's prior conviction when the

---

[8] "If a 'statute lists multiple, alternative elements, and so effectively creates several different crimes,' then the statute is divisible." *United States v. Lockett*, 810 F.3d 1262, 1269 (11th Cir. 2016) (quoting *Descamps v. United States*, 570 U.S. 254, 264 (2013)).

statute is divisible).

A defendant may implicitly or explicitly assent to the factual proffer. *United States v. Dudley*, 5 F.4th 1249, 1263 n.15 (11th Cir. 2021) ("[A] subsequent sentencing court may rely on a factual proffer if there is evidence of confirmation or assent by the defendant, be it implicit or express assent."). In *Dudley*, the Eleventh Circuit held that the defendant implicitly assented to the prosecution's factual proffer particularly because neither the defendant nor his counsel objected thereto and the defendant "expressed his intention to plead guilty following the state's factual proffer . . . without hesitation and without any hint of an objection" "[despite] [t]he colloquy [being] replete with opportunities" for the defendant to challenge the facts. 5 F.4th at 1263–64 (alterations in original) (quoting *United States v. Taylor*, 659 F.3d 339, 347 (4th Cir. 2011)).

The transcript of the state plea colloquy reveals that Harris implicitly assented to the prosecution's factual basis for the charge. Harris was originally charged with attempted first-degree murder. (Cr. Doc. 27-1 at 7.) However, pursuant to his plea agreement with the prosecution, he entered a plea of guilty to the lesser-included offense of attempted first-degree assault. (*Id.* at 7, 14.) At the state plea hearing, the prosecution presented the following statement of facts with respect to Harris's attempted first-degree assault charge:

> [Harris] was charged with the count of attempted murder that has now been reduced to attempted assault in the first degree. We believe the evidence to show on April the 5th, 2008, around three o'clock in the morning, that a Deboris Thomas and a Marcus Thomas were at the Shell station located at the intersection of Greensboro and Skyland. While at the Shell station, [Harris]'s brother, Keandre Harris, got into an altercation. During the course of the altercation, witnesses including Marcus Thomas and Deboris Thomas, observed [Harris] come out of his vehicle with a pistol and began shooting at the two Thomas brothers. The two brothers — especially Deboris was hit multiple times. Marcus was also hit by bullet fragments and received injuries. The Thomas brothers were able to identify Mr. Harris from a photographic lineup. His vehicle as it was leaving the parking lot of the Shell station, a police officer arriving at the scene attempted to stop the vehicle, but it did not stop, and he fired shots at the vehicle striking it three times. The vehicle was stopped on Greensboro Avenue, and inside the vehicle being driven by [Harris] was a magazine for a .9 millimeter pistol that was found on the floorboard. Old Greensboro Avenue was determined to be the route [Harris] took. A .9 millimeter pistol was found and a magazine in the pistol that would hold twelve nine millimeters bullets. Seven were missing from the gun. When police searched the scene at the Shell station, they recovered seven .9 millimeter shell casings.

(Cr. Doc. 27-1 at 7–8.) Upon hearing the prosecution's statement of facts during the state colloquy, neither Harris nor his counsel made any additions, corrections, or objections, and Harris confirmed his intent to plead guilty. (*See id.* 27-1 at 7–12.) Harris also stated that he understood the facts that the prosecution presented and that he had no questions about them. (*See id.* at 12.) Consequently, Harris's "plea of guilty constituted an admission of the violent conduct reflected in the sole proffered factual basis for the plea." *See Dudley*, 5 F.4th at 1263 n.15 (quoting *United States v. Taylor*, 659 F.3d at 347).

Because Harris implicitly assented to the prosecution's factual basis of his attempted first-degree assault charge at the state plea colloquy, this Court could consider the colloquy transcript as a *Shepard* document. *See Shepard*, 544 U.S. at 25; *see also Dudley*, 5 F.4th at 1263–64. As a matter of law, then, this Court's consideration of the colloquy as a *Shepard* document in determining that the elements of Harris's attempted first-degree assault conviction met the definition of a violent felony under the ACCA was proper. This Court would have thus overruled any objection by Danneman, and Danneman's performance was not deficient simply because he did not raise a non-meritorious objection. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (holding that defense counsel did not render ineffective assistance of counsel for failing to object to correct statements of law). Danneman's decision to refrain from making a baseless objection supports neither a finding of deficient performance nor prejudice.

### 3.    Danneman's failure to raise an argument pursuant to *Rehaif* did not constitute ineffective assistance.

Harris contends that Danneman was ineffective for failing to raise a *Rehaif* argument — i.e., that the Government must prove that Harris knew he was a felon at the time he possessed the firearm in order to obtain a conviction under 18 U.S.C. § 922(g)(1). (Doc. 1 at 6–7.) Harris cannot show that Danneman's performance was deficient, and his claim of ineffective assistance of counsel thus lacks merit.

This Court accepted Harris's guilty plea on July 20, 2017, and entered its judgment as to Harris on March 30, 2018. (*See* Cr. Docs. 25, 36.) Harris filed a notice of appeal on April 12, 2018. (*See* Cr. Doc. 29.) The Supreme Court decided *Rehaif* in June 2019. 139 S. Ct. at 2191.

At the time of Harris's criminal and direct-appellate proceedings, the law made clear that a defendant's knowledge of felon status was not an element. *See United States v. Jackson*, 120 F.3d 1226, 1229 (11th Cir. 1997) (holding that knowledge of felon status was not an element of an 18 U.S.C. § 922(g)(1) offense), *abrogated by Rehaif*, 139 S. Ct. 2191. Although *Rehaif* later established the knowledge-of-status element, "[r]easonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) (alteration in original) (quotations omitted) (quoting *Elledge v. Dugger*, 823 F.2d 1439, 1443, *modified in unrelated part*, 833 F.2d 250 (11th Cir. 1987)). Consequently, Harris's claim does not satisfy the performance prong of the *Strickland* test because Danneman was under no obligation to present an argument in anticipation of a case like *Rehaif*, and Harris therefore cannot prevail on his claim of ineffective assistance of counsel. *See Dawkins v. United States*, No. 19-cv-08047, 2020 WL 3576841, at *1–2 (N.D. Ala. July 1, 2020) (holding that the petitioner's counsel did not render

ineffective assistance by failing to raise a knowledge-of-status argument because the petitioner's criminal and direct-appellate proceedings predated *Rehaif*, and the law at that time did not include knowledge-of-status as an element of 18 U.S.C. § 922(g)(1)); *see also Whigan v. United States*, No. 19-cv-685, 2022 WL 1752411, at *3 ("[Petitioner's] counsel cannot be said to have performed deficiently by failing to request, in August 2017, a jury instruction based on the June 2019 holding in *Rehaif*."), *R. & R. adopted*, 2022 WL 1748563, at *1 (M.D. Ala. May 31, 2022).

In any event, Harris cannot show that Danneman's failure to raise a *Rehaif* argument prejudiced his defense. As discussed below,[9] the transcript of the state plea colloquy firmly demonstrates Harris's knowledge of his felon status[10] — i.e., Harris's knowledge that he had been convicted of "a crime punishable by imprisonment for a term exceeding one year." *See* 18 U.S.C. § 922(g). Harris alleges no facts in support of his argument that he would have presented evidence indicating otherwise had he gone to trial. Harris thus fails to establish a reasonable probability that the result of the proceedings would have been different if Danneman had raised a *Rehaif* argument.[11] Consequently, Harris meets neither the performance nor prejudice prong of the *Strickland* test for ineffective assistance.

    **4.**      **Danneman did not render ineffective assistance merely**

---

[9] *See* discussion *infra* Section B.1.

[10] (*See* Cr. Doc. 27-1 at 6, 14–16.)

[11] *See* discussion *infra* Section B.1.

**because he did not file a motion for rehearing or rehearing en banc or petition for a writ of certiorari.**

Under the Sixth Amendment, "all criminal defendants are entitled to the assistance of counsel." *United States v. Garey*, 540 F.3d 1253, 1262 (11th Cir. 2008). The "[c]onstitutional right [to counsel] attaches at the time adversarial criminal proceedings are initiated and continues through completion of a first, non-frivolous direct appeal." *Id.* at 1263 (citations omitted) (citing *Rothgery v. Gillespie County*, 554 U.S. 191, 214 (2008), and *Smith v. Robbins*, 528 U.S. 259, 278 (2000)). A petitioner cannot claim constitutionally ineffective assistance of counsel where he lacks a constitutional right to an attorney. *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("[W]here there is no constitutional right to counsel[,] there can be no deprivation of effective assistance.") (citing *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982)); *see also West v. Allen*, 868 F. Supp. 2d 1224, 1251 (N.D. Ala. 2011) ("Ineffective assistance of counsel claims are specifically limited to the performance of attorneys who represented a defendant at trial or on direct appeal from the conviction.").

Danneman represented Harris throughout the criminal proceedings as well as during Harris's appeal to the Eleventh Circuit. (*See, e.g.*, Cr. Docs. 8, 31.) Harris was not entitled to any attorney, much less an effective attorney, past that stage. Harris could have petitioned for a writ of certiorari himself regardless of whether he first

filed a petition for a rehearing or a rehearing en banc,[12] and Danneman was under no obligation to do either. In short, Harris could not have suffered ineffective assistance of counsel past his direct appeal because he lacked a constitutional right to counsel beyond that stage.

### B.    Substantive Claims

Two of Harris's three substantive claims are procedurally defaulted because he failed to raise them in the district court or on direct appeal, and his third claim is procedurally barred because he raised — and the Eleventh Circuit rejected — the claim on direct appeal.

"Procedural bar" and "procedural default" have distinct meanings, and a petitioner cannot overcome them in the same manner. *See Seabrooks v. United States*, 32 F.4th 1375, 1383–84 (11th. Cir. 2022). "A procedural bar prevents a defendant from raising arguments in a § 2255 proceeding that he raised and [the Eleventh Circuit] rejected on direct appeal. A defendant can overcome a procedural bar when . . . there is an intervening change in the law." *Id.* at 1383 (citations omitted) (citing *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014), and *Davis v. United States*, 417 U.S. 333, 342 (1974)). "By contrast, a 'procedural default' occurs when

---

[12] "A petition for rehearing or suggestion for rehearing en banc is not . . . required before a petition of certiorari may be filed in the United States Supreme Court." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1296 n.4 (11th Cir. 2005).

a defendant raises a new challenge to his conviction or sentence in a § 2255 motion."
*Id.* at 1383–84 (citing *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004)).
"If a defendant fails to raise an issue on direct appeal, he may not present the issue
in a § 2255 proceeding unless his procedural default is excused. To overcome a
procedural default, a defendant must show either (1) cause and prejudice, or (2) a
miscarriage of justice, or actual innocence." *Id.* at 1384 (citation omitted) (citing
*McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011)).

### 1. *Rehaif* does not entitle Harris to relief because his claim thereunder is procedurally defaulted.

In addition to claiming that his counsel was ineffective for failing to raise a
*Rehaif*-type argument, Harris now asserts a substantive argument under *Rehaif*.
(Doc. 13 at 1–8.) Harris contends that *Rehaif* entitles him to relief because neither his
counsel, this Court, nor the Government informed him prior to the Court's
acceptance of his guilty plea that a conviction under 18 U.S.C § 922(g)(1) requires
that he knew that he was a convicted felon when he possessed the firearm. (Doc. 13
at 2.)

Harris's *Rehaif* claim, however, is procedurally defaulted because he failed to
raise the claim on direct appeal. "Under the procedural default rule, a defendant
generally must advance an available challenge to a criminal conviction or sentence
on direct appeal or else the defendant is barred from presenting that claim in a § 2255

proceeding." *Lynn*, 365 F.3d at 1234. Harris failed to advance any *Rehaif*-type claim on direct appeal. As a result, Harris can overcome the procedural default only if one of the two exceptions to the procedural default rule applies. *See McKay*, 657 F.3d at 1196. "Under the cause and prejudice exception, a § 2255 movant can avoid application of the procedural default bar by 'show[ing] cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error.'" *Id.* (quoting *Lynn*, 365 F.3d at 1234). "Under the actual innocence exception[,] . . . a [petitioner]'s procedural default is excused if he can show that he is actually innocent."

Harris cannot establish actual innocence. The actual innocence exception is exceedingly narrow. *McKay*, 657 F.3d at 1198; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995) (stating that the actual innocence standard "ensures that petitioner's case is truly 'extraordinary'") (citation omitted). A petitioner must "show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Schlup*, 513 U.S. at 327 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "'Actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623; *e.g.*, *McKay*, 657 F.3d at 1198. "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup* 513 U.S. at 327–28). "The petitioner thus is

required to make a stronger showing than that needed to establish prejudice."
*Schlup*, 513 U.S. at 327.

A petitioner alleging actual innocence on an 18 U.S.C. § 922(g)(1) conviction
"must show that he had no knowledge of being a convicted felon when he possessed
the firearm." *Whittle*, 2023 WL 3071092, at *2 (citing *Rehaif*, 139 S. Ct. at 2200, and
*Hatcher v. United States*, No. 19-cv-8053, 2022 WL 4474915, at *2 (N.D. Ala. Sep.
26, 2022) ("To be actually innocent under *Rehaif*, . . . [the] [p]etitioner would have
to be unaware that he is a felon.")). Notably, though, "[i]n felon-in-possession cases
where the defendant was in fact a felon when he possessed firearms, the defendant
faces an uphill climb in trying [to argue] . . . that he did not know he was a felon. The
reason is simple: If a person is a felon, he ordinarily knows he is a felon. 'Felony
status is simply not the kind of thing that one forgets.'" *Greer v. United States*, 141
S. Ct. 2090, 2097 (2021) (quoting *United States v. Gary*, 963 F.3d 420, 423 (4th Cir.
2020) (Wilkinson, J., concurring)); *see also, e.g.*, *United States v. Innocent*, 977 F.3d
1077, 1082 (11th Cir. 2020) ("[M]ost people convicted of a felony know that they are
felons."). Multiple felony convictions and serving a term of imprisonment for longer
than one year can provide circumstantial evidence that a petitioner knew he was a
felon. *See United States v. Reed*, 941 F.3d 1018, 1021 (11th Cir. 2019) ("[S]omeone
who has been convicted of felonies repeatedly is especially likely to know he is a

felon."); *Innocent*, 977 F.3d at 1083 ("[S]erving more than a year in prison provides circumstantial evidence of knowledge of felon status."); *Greer*, 141 S. Ct. at 2097–98 (discussing the defendants' multiple felonies; failure to dispute the fact of their prior convictions; stipulations to their felon status at trial and upon pleading guilty, respectively; and failure to argue on appeal "that they would have presented evidence at trial that they did not in fact know they were felons when they possessed firearms" as "substantial evidence that [the defendants] knew they were felons").

Upon review of the record, this Court finds no evidence supporting Harris's contention that he lacked knowledge of his status as a felon when he possessed the firearm. Harris sets forth no facts contradicting such a conclusion but merely makes conclusory allegations.

Perhaps most importantly, the state plea colloquy transcript of Harris's state convictions provides incontrovertible evidence that Harris knew he was a felon. At the time of the colloquy, Harris already had at least three other felony convictions for possession and/or distribution of a controlled substance. (*See* Cr. Doc. 27-1 at 6.) The state court confirmed Harris's felonies during the colloquy:

> THE COURT: Mr. Harris, I am showing you [that] you have three prior convictions, those being . . . [one for] possession of a controlled substance . . . [and two for] distribution of controlled substances . . . Do you agree and admit that you have those three prior felonies?
>
> [HARRIS]: Yes, sir.

(Cr. Doc. 27-1 at 6.) With respect to the charges at issue at the plea colloquy, the

following exchange occurred:

> THE COURT: . . . [Y]ou would be pleading guilty to the lesser-included offense of attempted assault in the first degree under Count 1 and Count 2. . . . You would receive in each of those counts a fifteen year sentence . . . Do you understand?
>
> [HARRIS]: Yes sir.
>
> . . .
>
> THE COURT: In each of the possession cases, you would receive . . . a fifteen-year sentence as an habitual offender. . . . [I]t would be one fifteen-year sentence which you will have from all these cases, all being ordered to run concurrently. Is that your agreement with respect to all of these cases?
>
> [HARRIS]: Yes, sir.

(Cr. Doc. 27-1 at 14–16.)

The plea colloquy plainly demonstrates that Harris knew that his prior

convictions for drug possession and distribution were felonies as well as the fact that

his attempted first-degree assault conviction and other drug-related convictions that

were the subject of the colloquy were punishable by imprisonment for a minimum

term of fifteen years. (*See* Cr. Doc. 27-1 at 6–7, 14–16.) Additionally, the PSR reveals

that Harris had previously been convicted of at least seven felony offenses at the time

he possessed the firearm at issue in the criminal case underlying the present action.

(*See* Cr. Doc. 23 (sealed) at 8–22.) Harris had also spent approximately seven years

incarcerated at that time. (*See* Cr. Doc. 24 (sealed) at 2.) In a sentencing memorandum to this Court, Harris noted "that his criminal record is extensive and that he has spent the majority of his formative years incarcerated." (Cr. Doc. 22 at 1.) Moreover, Harris stipulated to having seven felony convictions when he pled guilty. (Cr. Doc. 15 at 3.) Because the record contains overwhelming evidence supporting the conclusion that Harris knew of his felon status when he possessed the firearm, he cannot satisfy the actual innocence exception.[13]

Neither can Harris establish cause and prejudice. "The novelty of a claim may constitute cause for excusing the procedural default, but only when the claim is truly novel, meaning that 'its legal basis [was] not reasonably available to counsel.'" *United States v. Bane*, 948 F.3d 1290, 1296–97 (11th Cir. 2020) (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)) (alteration in original). "*Rehaif* was not 'truly novel' in the sense necessary to excuse procedural default." *Innocent*, 977 F.3d at 1084. Harris, therefore, cannot utilize the "novelty" exception to excuse his procedural default. *See id.*; *see also Davis v. United States*, No. 15-cr-00019 and No. 20-cv-00072, 2021 WL 4768638, at *5 (M.D. Ga. July 12, 2021) (citing multiple cases within the

---

[13] For these reasons, and because Harris alleged no facts supporting his assertion that he would have presented evidence indicating that he lacked knowledge of the relevant ranges of punishment at trial, Harris also fails to establish prejudice with respect to his claim of ineffective assistance of counsel for Danneman's failure to raise an argument under *Rehaif*. *See* discussion *supra* Section A.3.

Eleventh Circuit in which the courts found that petitioners who did not challenge their convictions under 18 U.S.C § 922(g) in their pre-*Rehaif* direct appeals "failed to establish cause for procedural default based on the novelty exception").

Additionally, meritorious "[i]neffective assistance of counsel [claims] may satisfy the cause exception to a procedural bar." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000). However, as previously discussed, Harris's counsel's failure to raise a *Rehaif* claim during the criminal proceedings or on direct appeal does not constitute cause because counsel cannot be ineffective for failing to raise a claim based on predictions of how the law may develop. *See Spaziano*, 35 F.3d at 1039; *see also Dawkins*, 2020 WL 3576841, at *2 (finding that counsel's failure to raise a *Rehaif* claim before *Rehaif* was decided was not ineffective assistance sufficient to provide cause to excuse petitioner's procedural default of the claim).

> **2.     Harris's claim that his prior convictions under Alabama Code § 13A-12-211(a) are not serious drug offenses under the ACCA is procedurally defaulted.**

Harris challenges this Court's classification of his convictions under Alabama Code § 13A-12-211(a) as "serious drug offenses" as the ACCA and Sentencing Guidelines define the term. (Doc. 4 at 1–2; Doc. 13 at 9–15.) *See* 18 U.S.C. § 924(e)(2)(A); U.S.S.G. § 4B1.2(b). Harris raised no objection to the classification of his convictions as serious drug offenses in this Court during his criminal proceedings

or in his appeal. Furthermore, Harris alleges no facts sufficient to overcome the default. Consequently, Harris's claim with respect to whether his prior convictions qualify as serious drug offenses under the ACCA is procedurally defaulted.

In any event, the Eleventh Circuit affirmatively held that convictions under Alabama Code § 13A-12-211(a) "categorically qualify" as predicate serious drug offenses under the ACCA and predicate controlled substance offenses under the Sentencing Guidelines. *Hollis v. United States*, 958 F.3d 1120, 1123 (11th Cir. 2020). Even despite any procedural default, then, Harris's argument remains unsuccessful.

> **3.** **Harris's argument that his prior conviction for attempted first-degree assault does not qualify as a violent felony under the ACCA is procedurally barred.**

"[T]he ACCA mandates a minimum sentence of 15 years' imprisonment for any defendant convicted of being a felon in possession of a firearm who has three prior convictions 'for a violent felony or a serious drug offense, or both, committed on occasions different from one another.'" *Harris*, 941 F.3d at 1051 (quoting 18 U.S.C. § 924(e)(1)). At the time of Harris's felon-in-possession conviction under 18 U.S.C. § 922(g), he had already accrued multiple state felony convictions, including a conviction for attempted first-degree assault. (*See* Cr. Doc. 23 (sealed) at 19–20.) The state statute defines assault in the first degree as follows:

A person commits the crime of assault in the first degree if:

(1) With intent to cause serious physical injury to another person, he or she causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument; or

(2) With intent to disfigure another person seriously and permanently, or to destroy, amputate, or disable permanently a member or organ of the body of another person, he or she causes such an injury to any person; or

(3) Under circumstances manifesting extreme indifference to the value of human life, he or she recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to any person; or

(4) In the course of and in furtherance of the commission or attempted commission of arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree, or any other felony clearly dangerous to human life, or of immediate flight therefrom, he or she causes a serious physical injury to another person; or

(5) While driving under the influence of alcohol or a controlled substance or any combination thereof in violation of Section 32-5A-191 or 32-5A-191.3, he or she causes serious physical injury to the person of another with a vehicle or vessel.

ALA. CODE § 13A-6-20(a). In relevant part, the statute defining attempt states:

A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.

ALA. CODE § 13A-4-2(a).

Following Harris's plea hearing, the probation office determined that Harris was subject to the ACCA sentence enhancement due, in part, to his attempted first-

degree assault conviction. (*See* Cr. Doc. 23 (sealed) at 19–20.) Harris made a timely objection to the classification of the conviction as a violent felony. Harris argued that the conviction could not qualify as a violent felony under the ACCA, which requires "the knowing or intentional application of force,"[14] because an individual could commit assault under § 13A-6-20(a)(3)–(5) with merely a recklessness *mens rea*. (Cr. Doc. 35 at 2–4.) At the sentencing hearing, the Government offered the transcript of the plea colloquy from the convicting state court as a *Shepherd*[15] document. (*See* Cr. Doc. 35 at 4–6, 16–17.) This Court ultimately overruled Harris's objection to the enhancement, concluding that his attempted first-degree assault conviction fell under one of the subsections that met the ACCA's definition of a violent felony. (*See id.* at 9.)

This Court's ruling in that respect formed the basis for Harris's sole claim on direct appeal. *See Harris*, 941 at 1050. Notably, Harris did not challenge this Court's determination that he had two prior convictions for serious drug offenses for purposes of the ACCA sentence enhancement. *See id.* at 1058. The Eleventh Circuit determined that Harris's attempted first-degree assault conviction necessarily fell under Alabama Code § 13A-6-20(a)(1) or (a)(2)[16] and held that both subsections

---

[14] *Hylor v. United States*, 896 F.3d 1219, 1222 (2018).

[15] *See* discussion *supra* Section A.2.

[16] "Alabama law dictates that Harris could not have pled guilty to attempting to commit a form of unintentional first-degree assault. That means that he could not have been convicted under § 13A-

qualify as violent felonies under the ACCA. *See Harris*, 941 F.3d at 1058. Consequently, the Eleventh Circuit held that Harris had the requisite three predicate convictions to sustain a sentence enhancement under the ACCA and affirmed this Court's decision. *Id.*

Because Harris raised the instant argument on direct appeal and the Eleventh Circuit rejected it, Harris is procedurally barred from raising the claim in a § 2255 petition absent an intervening change in the law. *See Seabrooks*, 32 F.4th at 1383. No such change has occurred. The claim is therefore procedurally barred.

## IV.    Conclusion

For the foregoing reasons, Harris's § 2255 motion to vacate, set aside, or correct a sentence is due to be denied and this case dismissed with prejudice.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See* Rule 11, Rules Governing § 2255 Proceedings. This Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v.*

---

6-20(a)(3) . . . or under (a)(4). . . . Finally, the [PSR] plainly tells us that . . . his conviction could not have arisen under (a)(5)." *Harris*, 941 F.3d at 1056.

*McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-EL v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). This Court finds that Harris's claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** on May 10, 2023.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

211913